**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

PAUL MOON                                                                                          PLAINTIFF

v.                                              No. 4:08CV00527 JLH

OZARK HEALTH, INC.                                                                              DEFENDANT

## OPINION AND ORDER

Paul Moon filed this action against Ozark Health, Inc., alleging breach of contract,
conversion, and violations of ERISA and FLSA.  Moon has filed a motion for summary judgment,
arguing that it is entitled to judgment as a matter of law on all of Moon's claims that arise under
federal law and that the Court lacks diversity jurisdiction over the state-law claims.  Ozark Health,
Inc., has responded, and Moon has replied.  For the following reasons, Ozark Health's motion for
summary judgment is granted with respect to Moon's claims that arise under the laws of the United
States.  The amount in controversy on Moon's state-law claims is less than $75,000, so those claims
will be dismissed without prejudice.

### I.

A court should enter summary judgment if the evidence, viewed in the light most favorable
to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *see also Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla
v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005).  The party moving for summary
judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material
fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

## II.

Ozark Health hired Paul Moon on October 15, 2007, to be the administrator of Ozark Health Nursing Home.  In a letter dated October 15, 2007, and signed by both Moon and Herbert K. Reamey, III, CEO of Ozark Health, the parties agreed that Moon's employment would begin on November 5, 2007.  The agreement also stated that Moon's starting salary would be $75,000 per year; that his salary would be reviewed for appropriateness at the end of 90 days and annually thereafter; that he would be paid a relocation allowance of $2,500; and that his PTO (paid time off) earnings would begin immediately.  Moon's duty as the nursing home administrator was to run the nursing home, as he was the only employee licensed to run it.

The written agreement included no additional terms, but Moon alleges that the parties agreed to additional terms.  Although the Ozark Health Medical Center Employee Health Benefit Plan provided that employee coverage would begin the first day of the month after ninety (90) days of full-time employment provided that the employee had enrolled, Moon alleges that Reamey told him that his benefits would become effective starting December 1, 2007.  Moon applied for benefits on

2

February 20, 2008, and was provided coverage as of March 1, 2008.  On March 19, 2008, Ozark

Health sent to Moon and his wife a notice of commencement of his coverage and of continuation

coverage rights under COBRA.

In April of 2008, Moon requested at least two days of time off.  After no one had seen or

heard from Moon for several days, the director of nursing attempted to call Moon at home, but his

home phone had been disconnected.  Another Ozark Health employee was sent to Moon's home, but

the house was empty.  The employee informed Reamey that a neighbor had told him that moving

trucks had been at the house the week before.  Without notice of resignation to or any

communication with Ozark Health, Moon had moved away.  He never returned to work.  Moon

states that he left his job because Ozark Health had breached his employment contract and placed

him in a position of violating federal and state laws governing nursing homes, although he does not

explain which laws he was in danger of violating or how Ozark Health's conduct put him in that

position.

Ozark Health terminated Moon as of April 18, 2008.  Ozark Health sent Moon a Certificate

of Creditable Coverage on April 29, 2008; a notice of his right to elect COBRA continuation

coverage on May 1, 2008; and a notice of the expiration of his election period and continuation

coverage rights on July 24, 2008.  Moon did not elect to continue COBRA coverage with Ozark

Health.

**III.**

**A.    MOON'S FLSA CLAIM**

The first count of the amended complaint alleges that Ozark Health violated the Fair Labor

Standards Act (FLSA) in failing to pay Moon's wages on a timely basis.  However, the FLSA states

3

that it does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Moon's amended complaint states that he was employed as an administrator and that he was responsible for Ozark Health's nursing home. In Moon's responses to Ozark Health's Statement of Material Facts, Moon admits that he was employed as the "Nursing Home Administrator." The employment agreement provided that Moon was to be paid an annual salary of $75,000 per year. The undisputed evidence shows that Moon is an administrative employee for purposes of the FLSA. *See Spinden v. GS Roofing Products Co., Inc.*, 94 F.3d 421, 426 (8th Cir. 1996) (stating that where an employee earns more than $250 per week, an employee is an administrative employee if his "primary duty consists of the performance of [office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers], which includes work requiring the exercise of discretion and independent judgment") (quoting 29 C.F.R. § 541.2(e)(2) and incorporating 29 C.F.R. § 541.2(a)(1)). Because Moon was an administrative employee, he is not covered by the provisions of FLSA. Therefore, summary judgment will be granted to Ozark Health on Moon's FLSA claim.

## B.    MOON'S ERISA CLAIMS

The second count of the amended complaint alleges that Ozark Health failed to enroll Moon in the benefits plan in a timely fashion and failed to provide timely notice of his COBRA coverage under the group health plan. Ozark Health's Employee Health Benefit Plan states the following: "Eligible employees, as described in Employee Eligibility, are covered under the Plan on the first day of the month following completion of ninety (90) days of full-time employment provided the employee has enrolled for coverage in Employee Enrollment." Moon's employment began on November 5, 2007, making him eligible for coverage starting on March 1, 2008. He applied for

coverage on February 20, 2008, and his coverage began on March 1, 2008, pursuant to the Employee Health Benefit Plan.

Moon states that Reamey told him that his coverage would begin on the first day of the month following the start of his employment, meaning that his coverage would be effective on December 1, 2008. That promise, however, was not reduced to writing and was not included in the employment agreement signed by both Moon and Reamey on October 15, 2007. The employee health benefit plan unambiguously stated that employee coverage would commence on the first day of the month following ninety days of employment. Moon argues in his response brief that Ozark Health misled him regarding the commencement of his health coverage, resulting either in breach of contract or breach of ERISA fiduciary duties.

The Eighth Circuit has held that an oral agreement cannot supercede contradictory terms in a written ERISA welfare benefit plan. *United Paperworkers v. Jefferson Smurfit Corp.*, 961 F.2d 1384, 1386 (8th Cir. 1992). An employer and an employee may bargain for certain benefits, but "the fruits of those bargains must be reduced to writing and incorporated, in some fashion, into the formal written ERISA plan provided to employees." *Id.* Therefore, Moon's statement that Reamey promised him earlier coverage is not admissible to contradict or add to the written health benefit plan. In accordance with the written health benefit plan, Moon applied for coverage on February 20, 2008, and was approved for coverage commencing March 1, 2008—the first day of the month following completion of ninety days of employment. Moon has presented no evidence that Ozark Health breached its ERISA duties by failing to enroll him in a timely fashion.

Moon argues in the alternative that Ozark Health breached its fiduciary duty under ERISA inasmuch as Reamey misled him as to when his benefits would start. An ERISA fiduciary may "'not

affirmatively miscommunicate or mislead plan participants about material matters regarding their ERISA plan.'" *In re Xcel Energy, Inc.*, 312 F. Supp. 2d 1165, 1176 (D. Minn. 2004) (quoting *In re Enron Corp.*, 284 F. Supp. 2d 511, 555 (S.D. Tex. 2003). However, Moon was not a plan participant at the time Reamey made the alleged misrepresentations, so he has no standing under ERISA to make a claim that Reamey's alleged misrepresentations violated fiduciary duties. *Blaylock v. Hynes*, 104 F. Supp. 2d 1184, 1188-89 (D. Minn. 2000). Any such claim would arise under state law, not ERISA. *Id*. at 1189.

As mentioned, Moon also alleges that Ozark Health failed to provide timely notice of COBRA coverage. Moon's coverage began on March 1, 2008, and Ozark Health sent him notice of his coverage on March 19, 2008. Moon alleges not that the notice was defective but that the notice was not provided in a timely manner. Twenty-Nine U.S.C. § 1166(a)(1) provides that the group health plan must provide notice "at the time of commencement of coverage under the plan." In accordance with the requirements of the written health plan, Moon applied for coverage on February 20, 2008, knowing that he was to become eligible for coverage beginning on March 1. Moon has not shown, and the Court has not found, any case law supporting his allegation that receiving notice of coverage by letter dated nineteen days after the commencement of his coverage violates the notice provisions of 29 U.S.C. § 1166(a)(1). Moon also failed to provide evidence, and failed to allege in the amended complaint, that he sustained any damages because he received the letter on March 19 rather than on March 1. For the foregoing reasons, summary judgment will be entered on Moon's claim of insufficient notice of COBRA coverage.

In his response brief, Moon also alleges that he should have been allowed to enroll as a "special enrollee" with Ozark Health because he lost his COBRA eligibility with his previous

employer. This allegation is not present in Moon's amended complaint, but even if it were, it would not survive summary judgment. Moon argues that he requested and was denied an opportunity to enroll as a special enrollee, but he provides no evidence showing that he made such a request or that such a request was ever denied. In support of his argument, Moon cites to subsection (7) of 29 C.F.R. § 2590.701-6, which governs special enrollment for individuals who lose COBRA coverage, but that subsection does not exist. Moon has not shown that his particular circumstances—losing coverage because he left one employer to go to another—required Ozark Health to allow him to enroll specially in its employment health benefit plan, even if he had shown evidence that he made a request for special enrollment. Therefore, to the degree that this allegation could be found in the amended complaint, it also fails.

The amended complaint also alleges that Ozark Health, Inc., failed to provide Moon with a copy of the summary plan description at the initiation of the coverage as required by 29 U.S.C. § 1024(b)(1) and 29 U.S.C. § 1166. Moon has presented no evidence on this claim and does not argue it in his brief. Therefore, summary judgment will be entered on this claim.

## C.     MOON'S STATE LAW CLAIMS

Moon argues that the Court has diversity jurisdiction over his state-law claims of breach of contract and failure to pay wages on a timely basis. To maintain diversity jurisdiction, the parties must be diverse and the amount of damages must exceed $75,000. *See Bourgeois v. Vanderbilt*, 251 F.R.D. 368, 371 (W.D. Ark. 2008). A complaint alleging diversity jurisdiction should be dismissed "if it appears to a legal certainty that the claim is really less than the jurisdictional amount." *Id.* (citing *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)). If the defendant challenges the amount

in controversy, then the plaintiff has the burden of showing by a preponderance of the evidence that the amount in controversy does exceed $75,000.  *Id.*

Moon argues that the Court has diversity jurisdiction because his annual salary was $75,000 and Ozark Health should be liable to Moon for the remaining two and one-half years of his contract. He cites *Van Winkle v. Satterfield*, 58 Ark. 617, 25 S.W. 1113 (1894), and *School Dist. No. 45 v. McClain*, 185 Ark. 658, 48 S.W.2d 841 (1932), for the proposition that he can recover lost wages up to the time of trial.  However, in both of those cases the plaintiff was wrongfully discharged. Here, the evidence shows that Moon decided to leave his employment without any notice to Ozark Health: he quit.  To claim damages for two and one-half years after he quit his employment, Moon would have to plead and prove that he was constructively discharged.  "A constructive discharge exists when an employer intentionally renders an employee's working conditions intolerable and thus forces him to resign."  *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 250, 743 S.W.2d 380, 386 (1988).  Moon's amended complaint makes no allegation that he was constructively discharged, nor does he so argue in his brief.  Although he alleges that he left because Ozark Health was putting him in a position to violate laws, he does not state what laws he was in danger of violating or what actions of Ozark Health put him in that danger.  Because Moon has not alleged a claim for constructive discharge, the Court cannot consider his lost wages through trial as the amount in controversy.

In his deposition testimony, Moon admitted that the damages relating to his breach of contract claims included the value of (1) ninety-six (96) hours of paid time off (PTO); (2) the review of his salary after ninety days; and (3) insurance coverage starting December 1, 2007, as opposed to March 1, 2008.  Accepting Moon's testimony as true, it appears to a legal certainty that the amount

in controversy is less than $75,000.  *See Bourgeois*, 251 F.R.D. at 371.  Even if Ozark Health should have provided coverage to Moon starting December 1, 2007, Moon has presented no evidence that he sustained damages by being denied a medical claim during the period between December 1, 2007, and March 1, 2008.  Moon also has presented no evidence as to the value of the performance review that he did not receive, and any monetary value of his performance review would be speculative.  The evidence shows that Moon might be entitled to an award for his accrued PTO.  The value of 96 hours of PTO for Moon would amount to $3,600.  The amount in controversy in this case is well below the jurisdictional amount of $75,000.  Therefore, the Court does not have diversity jurisdiction over this dispute.

Moon's federal claims relating to FLSA, COBRA, and ERISA have been dismissed, and the amount in controversy on Moon's state-law claims does not exceed $75,000.  If the district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over state-law claims.  28 U.S.C. § 1367(c)(3).  Out of deference and respect for the courts of the State of Arkansas, this Court will exercise its discretion to decline to exercise supplemental jurisdiction with respect to Moon's state-law claims.  *Concor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stating that, after dismissing the federal claims, the district court should have exercised its discretion to decline pendent jurisdiction because of "the necessity to provide great deference and comity to state court forums to decide issues involving state law questions."); *Roeben v. BG Excelsior Ltd. P'ship*, No. 4:06CV01643, 2008 WL 54916, at *3 (E.D. Ark. Jan. 3, 2008).

## CONCLUSION

Moon has failed to present evidence to support his claims that arise under the laws of the United States, and summary judgment will be entered in favor of Ozark Health on those claims. The amount in controversy on the state-law claims alleged in Moon's amended complaint does not exceed $75,000, so the Court does not have diversity jurisdiction in this case. The Court declines to exercise supplemental jurisdiction over Moon's state-law claims. Therefore, Ozark Health's motion for summary judgment is GRANTED as to the claims of Paul Moon that arise under the laws of the United States. The claims of Paul Moon that arise under the laws of the State of Arkansas are dismissed without prejudice. Document #19.

IT IS SO ORDERED this 20th day of March, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE